Case number 23-3208, Harmeet Bains v. Merrick Garland. Argument not to exceed 15 minutes per side. Mr. Ratliff, you may proceed for the appellant. Thank you, and good morning panel, and it may please the court, my name is Rob Ratliff. I'm here on behalf of the petitioner, Harmeet Bains. I have reserved three minutes of my time for rebuttal. The thing that I think we have to take into consideration in this case is the statute under which Mr. Bains was originally charged. The immigration judge applied the modified categorical approach. And when you look at the statute, it certainly looks like it could be a statute that is divisible, but it is not. And the reason it looks like it's a statute that could be divisible is if we really look at what's going on in this statute, it changes the sentencing structure based on the drug type and the drug amount. None of which have to be charged in the actual indictment. This is a statute that gets little use in the state of Ohio, but it's a statute that, in my opinion, clearly violates the instructions from Apprendi in that entire line of cases that talk about how drug types, drug amounts, things that are elements of the offense that increase the penalties have to be charged in the indictment. And under this statute, an individual could be complete guilty to simply possessing a blank prescription pad, go into court with that guilty plea, and come out with the sentence of an F-1 crime for possession of 50 times bulk amount of a Schedule I drug. So that allows that finding to be made by the judge, and I think that's why this statute looks like it could be divisible, but clearly is not. Do you concede that it's divisible between Part I and II? I mean, between the schedules, not necessarily within this section, but one section says that if it's Schedule I or II, it's a particular class of felony, and the other one says if it's dangerous or 3, 4, 5, it's something. That's divisible, right? I would say that it's not, Your Honor, and the reason I would say it's not divisible based on those is because the statute itself is complete. The conviction, the crime, is complete solely within Section A of the statute. Everything else, and if you look at Section B of the statute, it's clear that all that other stuff, all of the drug type, the schedule, the amounts, even criminal history, is all penalty. It's all for sentencing and penalty. None of it is a required element of the offense. Now, I think, interestingly, in this case, the indictment did include the drug amount, and I think that's one of the key positions of the government's brief in this, is that the actual drug amount was alleged in the indictment. But I would argue, and I would say to you, that the reason that the drug amount is alleged in the indictment goes to the over-broadness in Section A that allows for a conviction either for deception to possess a drug or possession of simply a blank prescription pack. Can I ask you, because our case law says we can look at jury instructions to determine if the drug is an element of the offense, the type of drug, and your brief on page 17 says jury anonymity on the name of the drug is not required in this case, but Ohio jury instructions require it, and then our case law and Richie and Wilson et al. say, of course, we can look at jury instructions to determine that, pattern jury instructions. Why isn't that dispositive in this case? Excellent question, and it's because of the way Section A is written. Section A allows for an offense to be complete solely by possession of the blank prescription pack. Drug type doesn't even have to enter into a conviction under Section A. And I think if you look at a couple of different things here, I think it's important to note that it goes directly to that point, Judge. If you look at what the defendant pled guilty to, twice in the plea hearing transcripts on page 8, the judge asks him, you're pleading guilty to attempt deception to obtain a dangerous drug. Doesn't talk about amount, doesn't talk about anything. The distinction there is that deception to obtain the drug, not just the blank pack. Again, on page 13 in the sentencing transcripts, he talks about, and this time he says possession, but I think we can all agree that the judge meant to say deception, that it's an M1 attempted possession to obtain a dangerous drug. Again, in the sentencing, or in the plea hearing, the judge does not ask him what type of drug. He only talks about that it was for a drug because the distinction is between, is it a drug or is it simply a prescription pack? What do you do with Meehouse v. Sessions, which basically says that the equivalent possession statute is divisible by substance? I think Meehouse is very distinguishable. When you look at 292511 and 292503, which are the possession and the trafficking statutes, there's a very different way that they're written. In those, there's section A where if you do any of these things, it's a crime. Then section C of both of those convictions, or both of those statutes, says that whoever violates A is guilty of one of these offenses. That's very different here because in those situations, you're guilty of one of these offenses and it lays out all the different drug types and drugs that come out. In this case, it's section B, which says all these other things are purely penalty. I think interestingly, to further distinguish it from Meehouse, if you look at 2925.22 section C, which is a completely different type of section C than in 03 or 11, which are the trafficking and possessions, it's a driver's license suspension section. In Ohio, we suspend your license for everything. That section talks about suspension of a license. In section C, it says whoever pleads guilty to division A of this section gets their license suspended. It doesn't talk about any of the amounts. It doesn't talk about any of the types. It simply says A, which is, again, the deception to possess the drugs or simply the blank prescription pack. I think that's what's most interesting here. Meehouse talks about the 2925.11 and how there's the guilty to possess the controlled substance, but then that section C in 2925.11 is different because it talks about if you did this and you're guilty of one of these things and it sets out all these different types and amounts. I think that is very different. It creates different elements that go into place. I think the Smith case talks about that as well, that there is multiple ways to traffic, but then the various types and amounts are what's important there. I think that's one of the chief problems here. This statute looks divisible, but the reason it looks divisible is because the very structure of it is something that really hasn't passed constitutional muster since 1997 in Apprendi and that whole line of cases. Why are those cases even relevant here? Apprendi et al. are criminal law cases, and this is obviously an immigration proceeding. You don't have a jury. You don't have all the concerns. You don't have crimes. That's 100% correct, Your Honor, but what it goes to is whether this statute is a valid statute based on the way it's structured and two, whether or not a defendant actually pled guilty to something that would later impact his immigration case. I don't think that we can say that this is a divisible statute because if we do say it's divisible, then we're saying that all these different types, types of drugs, criminal history, amount of drugs, are all things that are elements that should have been charged, but they're not. Again, if you look at where I say the crime is complete with the violation of Section A, it is not. Counsel, you said should have been charged but were not, but they were.  It only lists the drug type, and the reason I would say that it did that, Your Honor, is because it has to make a distinction in Section A. Are you guilty of the deception to obtain a drug, or are you guilty of just possessing the prescription pack? Because Section A would allow you to get convicted of something just by possessing the blank prescription pack with no amounts, no even drug type. That's why it makes that distinction in the indictment to distinguish between the two alternatives that are solely within Section A. Counsel, if we were to conclude that the statute is divisible into B1 and B2, would this be covered? I don't believe so, Your Honor, because I think that it still allows, and especially in B1, it allows for conviction of just the possession of the pack. And when you look at B1, it says that the uncompleted prescription blank or the base crime for deception to possess the drug is the F5 unless you've been convicted of another crime, and then it's an F4. So it changes all that penalty stuff. So that's why I say it looks like it could be divisible, but it shouldn't be divisible because all these things should be elements. They all should be moved up, if you will. And the plain language of the statute tells us in Section B that all... Let me rephrase that. If we were to conclude that this statute is divisible into schedules, would this be covered? If you made that distinction, yes, but I think making that distinction would be improper because it would only look at schedules. And if you look at the way the statute is written, it is not only schedules but amounts. So why are we willing to say that it's divisible by schedules but not also divisible by amounts because those are contained within each of those sections. I'm sorry, where are the amounts? What section are the amounts in? The amounts are in sections, if you look at B2A, B2B, D, and then if you look at B3, again in A, B, and C, the amounts are all set forth in there. I have one other question. How do you track the statute with respect to dangerous drug? Because it's in A, which would make it seem that it's part of the definition, but then it's used sort of as an alternative to the schedule. So I'm not sure how do you track the way dangerous drug works. I think that's important. I don't think you can within the way the statute is written. And it defines dangerous drugs in other parts of the ORC. But I don't think you can make that distinction in the way the statute is written because it again, it separates out all these things that should otherwise be elements. And it just dumps them into what section B clearly says, are penalty only. All right, we'll hear from Ms. Lott. Thank you, good morning. May it please the court, Melissa Lott on behalf of the United States Attorney General. The court should deny the petition for review because petitioner's conviction is a removable controlled substance offense. The court doesn't have to decide in this case whether the statute is divisible by drug or by schedule because even assuming arguendo, it's only divisible by schedule. The conviction here was for an Ohio Schedule III drug, which at the time of conviction was a match to the federal Schedule III. So looking at the statute, the Deception to Obtain Dangerous Drugs statute at the time of the petitioner's conviction in 2003, as petitioner's counsel stated, there is section A, but then there's also section B. And section B has subsection one and two, and those divide the penalty categories based on the type of drug involved. And so because different penalties attach within those subsections, we know that the drug type is an element under MAPIS. And that's because if offenses have different penalties, then those things are elements, and that's based on Apprendi as incorporated into MAPIS. But section two includes a dangerous drug or marijuana or the schedules. So if that is a unitary section, isn't that too broad? Well, Your Honor, the section B2 is overbroad because dangerous drug standing on its own could include things that aren't federally controlled. But under all of the different ways you can determine divisibility, including the jury instructions, which require that the drug type be specified, under the possession line of cases, as well as the State v. Jackson case on drug trafficking under Ohio's drug trafficking statute. So in State v. Jackson, the Ohio Supreme Court said that the element, or I'm sorry, the schedule of the drug is an essential element of the crime. And that's because even if we accept that it's only, for the sake of argument, even if we accept that the schedule and not the specific drug is the element, the drug schedule is what puts it into that penalty category. And so that's what we need to, that's what the element is, that's how the penalty is determined. So it's not that the penalty overall is the element, it's what places the offense into the penalty category. So even if you look at B2 as dangerous drug or as the three schedules or as marijuana, you divide those up and you can just look at the schedule. And so here we know that it's a Schedule III drug. You're saying you divide them up, but that's the crucial question. I mean, why is this not a statement of sort of a sub-offense that carries a particular penalty that you can commit by seeking the dangerous drug or Schedule III or Schedule IV or Schedule V? Your Honor, that's because it depends on what the element is. And so even if under Jackson, which says that the essential element is the schedule, you can divide up the penalty category by schedule. So dangerous drug, which has its own definition, could be one category. Schedule III could be another, Schedule IV, and so on. And if the indictment has to charge... Am I correct that the penalties are the same for all of them? I'm sorry? Am I correct that the penalties are the same for all of them, that once you're in Section B-2, the penalty is determined? It doesn't matter what the schedule is, or is that incorrect? No, that's correct, Your Honor, that they all carry the same... The penalty is the same for all of them. And so then it's just a matter of what puts it into that penalty category. And so then the question is, well, is it the specific drug, or is it the schedule? And either way, this conviction for a Schedule III substance is a match to the Federal Controlled Substances Act. Okay, so you're saying that if somebody is caught with several substances and one of them is in Schedule IV and one's in Schedule III and one's in Schedule V, and there's some debate about whether it would belong to that person or the friend or whatever, that the jury would have to be unanimous on each of those substances, that the jury couldn't just conclude, well, he definitely had something that fell within 3, 4, or 5? Well, Your Honor, I would say that for this deception statute, we don't have a case that speaks clearly about whether the particular drug or the schedule is an element of the crime. But if you look at the similar possession statutes and you look at the similar drug trafficking statutes, in the drug possession context, that scenario where someone possesses two drugs in one container, that would give rise to two convictions. And that was one of the types of state cases mentioned in the Mijos decision. For drug trafficking, if you look at the State v. Jackson case, where it talks about what needs to be in the indictment, the court said that the schedule has to be identified in the indictment because that is an essential element of the crime. And so I think that the options are either that this similarly worded statute, that either the particular drug is an element or the schedule is an element. So at its broadest, the schedule would be an element, not the overarching penalty category. Judge Giffard? Yeah, what do you do with our case law that says when there's a pattern in jury instruction that instructs that the element is the particular drug, and Ohio's jury instruction does, why isn't the answer the drug itself is an element versus the schedule? And Jackson was a sufficiency of the evidence, so that was a little different. But why wouldn't that be the answer? Well, Your Honor, I think that that is a very good indication of divisibility by a particular drug. I think that there's different sources we can look to for divisibility on promathas. And so there's the jury instructions, there's the language and structure of the statute, you can take a peek at the record. I get what Mathis says, but then our case law follows up and says the jury instruction is sufficient. In fact, I think Wilson's an Ohio case, if I remember correctly. So Wilson's the 2020 case from our circuit, and I thought it was an Ohio case that said it's fine when you're doing the categorical approach to look at the jury instructions to determine it. It seems to me that Judge Tappara's, just to add to that a little bit, seems to me that Judge Tappara's analytical framework is the simplest way to look at this case. Yes, Your Honor, and I think that certainly the jury instructions do support that it's divisible by the particular drug. I think that comparing this case to the Minos decision and the Solomon decision, I think that, which both, you know, Minos dealt with the drug possession statute and Solomon with drug trafficking, I think that if you look at those decisions, in Minos there was clear case law from Ohio specifying that the particular drug is an element of the offense. And so I think that we recognize that the case law, we don't really, we don't have case law for this deception statute which speaks so clearly. But I do agree that the pattern jury instructions do support divisibility by the drug. But I think putting it all together, the court doesn't have to decide definitively in this case whether the statute is divisible by the drug or by the schedule, because either way, even if it's only divisible by the schedule, we have a categorical match here. How do you deal with Mr. Ratliff's argument about the uncompleted prescription form being enough? Well, Your Honor, looking at Section A, it's still, the drug is an element of the offense, so it's still required to relate to a dangerous drug. And then when you look to the penalty categories under B, those are tied to a particular drug or drug schedule. And so again, under Mathis, because different penalties attach based on the drug type or based on the drug schedule, those things are elements. Again, at minimum at the schedule level, if not the particular drug. And dangerous drug, how do you track it in the statute? Your Honor, are you asking about how it appears in B2? Well, it starts in A, right? Oh yes, Your Honor, I'm sorry. You're right. So I think that if you look at A, it does say dangerous drug, and that appears, from what I can tell, that it appears to just sort of be, I'm not sure if it's just a descriptor or kind of a catch-all, but then certainly when you get to B, and you get to B1 and B2, it divides it out by schedule, by marijuana, and by dangerous drug. And so there, you can see that dangerous drug in B2, it must have the meaning, that there's a defined meaning for dangerous drug, and that's separate from these different schedules. And so I think that you would, dangerous drug in B2 has the definition. So the definition applies to B but not to A? I think that it, I think that it has to, because B1 and 2 include schedules that wouldn't otherwise be included within the definition of dangerous drug. So if that makes sense, I guess what I'm trying to say is that under A, it says dangerous drug, and I'm reading that as sort of an overall, either that's an overall descriptor or it's, you know, it's at least a dangerous drug, but then in B1 and 2, we have the penalty categories, which get more specific and separate out schedule 1 or 2, marijuana, schedule 3, 4, 5, and so those things, because penalties, different penalties attach there, those things have to be elements. So I don't think that the court necessarily has to decide how the term dangerous drug is used in subsection A versus subsection B, but because I think that under B says different penalties attach based on the drug type or the schedule, we know that the statute must be divisible between those different things. And what about the New York, what about the Second Circuit case? I know it's not binding, but how would you distinguish that? The Harbin case? The Harbin case? So in that case, the statute, I believe that the statute said any controlled substance. Off the top of my head, I don't recall there being different penalties that attached. I think that the, I'm not sure if the jury instructions or the state case law, those might have been different from Ohio. I think that for this statute and for the similar Ohio drug statutes, we have the jury instructions, we have the penalty categories with different penalties depending on the different types of drugs, and then in the, certainly in the possession realm, we have the cases that speak clearly on divisibility. Thank you. If there are no further questions, the government respectfully requests that the court deny the petition for review. Mr. Ratliff? Thank you, Your Honor. I want to go to what I think is really a simple answer here. In the Meehaus decision, they talk about, to determine whether a statute is divisible, the court looks at what the elements are. In the Meehaus panel said that at a plea hearing, those elements are what a defendant necessarily admits when he pleads guilty, and they cite McCarthy v. United States, an old Supreme Court case. Here, twice, at the plea hearing, the judge asks him, you're pleading to attempt deception to obtain a dangerous drug. That's it. No type, no amount, nothing. Just attempt deception to obtain a dangerous drug. And Judge White, as you pointed out, that dangerous drug is a very broad category. I would submit that... That's different than the categorical approach. That's after you get through the categorical approach, then you look at Shepard and the documents. And so, we've already figured it out, and then we look to see. Well, correct, but I think that when we look at Section A, everything about that statute says that the crime is complete solely within the confines of Section A. The plea hearing, where the judge asks him if he's pleading guilty, stays within the confines of that Section A. No, this is where Apprendi dooms you. Right? Because this is where Apprendi causes a problem, because under Apprendi, you also have to have anything that... The element includes the type of drug here. We know under Ohio law, it includes the type of drug because of the jury instruction. And so, we know that's an element. And so, if that's an element, it's a problem for you. But that's not the way the statute is written, and that's not the way it's applied. It's not the way it was applied when he pled guilty. It's not the way it was applied when he was sentenced. But how it's applied after the fact is irrelevant to the categorical approach. The categorical approach is a pure legal question. The facts are irrelevant. I agree, that may be a problem. I've written plenty on that. But it's different because the way we analyze it is a legal question. And that gets back to where we're kind of full circle, back to the beginning. Because this statute, I believe, in the way it's written today, and the way it was written then, violates appending. Because it allows for this charge and conviction to happen solely under Section A, without any of those amounts or crimes being charged. Despite what the jury instruction, that model jury instruction, it does not take into consideration the fact that somebody could walk in, plead guilty, to simply possession. That's the plain language of the statute. Possession of a blank prescription pack. And so I think this statute violates appending. And that's why I was saying at the beginning that it looks divisible, but the only reason it looks divisible is because it violates appending. And I'm out of time. So thank you very much to the panel. And I appreciate the indulgence on allowing us to clarify the video today as well. We appreciate very much the arguments you've both given and we'll consider the case carefully.